UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| TAMI MUNRO, an individual, | No. |
| Plaintiff, | COMPLAINT FOR DAMAGES |
| v. | |
| CANDACE PRIEST, an individual, JULIA KEEGAN, an individual, CORRECT CARE SOLUTIONS, LLC, a corporation, WELLPATH, LLC, a corporation | |
| Defendants. | |

## I.  NATURE OF CASE

1.1     Defendants subjected Plaintiff Tami Munro to primitive, inhumane conditions of confinement over the course of seven days in June 2017.  Ms. Munro suffers from multiple sclerosis, and a related seizure disorder.  Despite full knowledge of Ms. Munro's vulnerable physical state, Defendants deprived Ms. Munro of her prescription medications, triggering a medical crisis.  In the midst of this crisis, Defendant Candace Priest, who was employed directly by Correct Care Solutions or Wellpath under contract with the Clallam County Jail, found evidence she believed suggested Ms. Munro had expressed suicidal ideations.  Despite her repeated explanations that this was not the case, she sent her to the ironically-named "safe cell," which is actually a primitive form of solitary confinement.  During her roughly forty-three hours in the safe cell, Ms. Munro had no mattress, no darkness at night, no contact with other detainees, no furniture of any kind, no sink, and no toilet.  She was forced to urinate and defecate

1  in a hole in the ground with a metal grate over it. Jail staff forced her to remove her regular

2  clothes and wear an ill-fitting smock that left her exposed to on-looking guards.

3      1.2    Defendants performed only a cursory mental health assessment and suicide

4  screening during Ms. Munro's first two days in the safe cell. They also continued to ignore her

5  pleas for access to medications, even after she suffered additional seizures. On one occasion, she

6  informed a guard that she had suffered from a seizure, and the guard callously responded by

7  asking what Ms. Munro expected her to do about it. The guard's response vividly illustrated the

8  total indifference Defendants showed to Ms. Munro and her pressing medical needs. Defendants

9  Priest and Keegan made one phone call each to an outside mental health evaluator. Finally, on

10  her third day in the safe cell a trained professional evaluated Ms. Munro and quickly concluded

11  she should not be there. Ms. Munro was released to the general population, though still without

12  access to her medications for another three days before she was released from the Jail altogether.

13      1.3    Defendants' actions violated Ms. Munro's constitutional rights, and numerous

14  state and federal laws. Defendants' reckless and outrageous actions and omissions caused Ms.

15  Munro significant physical and emotional harm.

16              **II.    PARTIES**

17      2.1    Plaintiff Tami Munro is an individual residing in Washington.

18      2.2    Defendant Candace Priest was, at all times material to the allegations contained

19  herein, an employee of Defendant Correct Care Solutions or Wellpath assigned to perform

20  nursing duties at the Clallam County Jail. At all times material, she acted under color of law.

21      2.3    Defendant Julia Keegan was, at all times material to the allegations contained

22  herein, an employee of Defendant Correct Care Solutions or Wellpath assigned to perform

23  nursing duties at the Clallam County Jail. At all times material, she acted under color of law.

24      2.4    Defendant Correct Care Solutions, LLC is a limited liability corporation

25  incorporated in Tennessee that, at all times material to the allegations contained herein, did

26  business in Clallam County, Washington. At all times material, it acted under color of law.

27

COMPLAINT FOR DAMAGES - 2

No.

11641.01 lg090701

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

2.5     Defendant Wellpath, LLC, is a limited liability corporation incorporated in Tennessee that, at all times material to the allegations contained herein, did business in Clallam County, Washington, or is the successor corporation for all actions taken by Correct Care Solutions, LLC. At all times material, it acted under color of law.  At times in this complaint, Correct Care Solutions and Wellpath are collectively referred to as "Correct Care" or "Correct Care Solutions."

### III.     JURISDICTION AND VENUE

3.1     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

3.2     Venue is appropriate in the Western District of Washington pursuant to 28 U.S.C. § 1391 because at least some of the Defendants reside in this judicial district and because the events and omissions giving rise to the claims alleged herein occurred within the Western District of Washington.

### IV.     FACTS

**A.     The County Denied Ms. Munro Prescription Medications.**

4.1     Plaintiff was arrested on June 17, 2017, on suspicion of driving under the influence.  She was transported to the Clallam County Jail ("the Jail") where she was booked.

4.2     At the time of Ms. Munro's detention at the Jail, Defendant Correct Care Solutions (also known as, or now known as, Wellpath) had a contract with Clallam County to provide medical services to individuals detained there.

4.3     Defendants Candace Priest and Julia Keegan worked for Correct Care Solutions (now known as Wellpath) in the Jail as Registered Nurses, effectively acting as members of the Jail's staff.  The term "jail staff" as used in this complaint includes Defendants Priest and Keegan.

4.4     Upon being booked into the Jail, Ms. Munro informed Jail staff that she suffers from Multiple Sclerosis (MS) and has frequent seizures as a result of her medical condition.  Ms. Munro explained that when she did not take her prescribed medications, she was more susceptible to seizures.

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

4.5     Despite this warning, Jail staff denied Ms. Munro access to at least two of the medications prescribed to her by her doctor:  Zanax and Oxycodone.

4.6     The County and Correct Care Solutions had no protocol in place for addressing a detainee's withdrawal from Zanax, despite the fact that withdrawal from Zanax is known to cause serious and even fatal medical conditions.

4.7     Jail staff also confiscated Ms. Munro's cane, which she needs to balance herself while walking.  She was not permitted to use her cane at any point during her detention.

4.8     Jail staff did not afford Ms. Munro the opportunity to challenge the County's refusal to provide her access to her cane and prescribed medications.

**B.     Defendants Transferred Ms. Munro to a "Safe Cell" After She Suffered Two Seizures.**

4.9     Jail staff initially placed Ms. Munro in a group cell with bunk beds.  At least two other individuals were detained there.

4.10    At about 5:00 p.m. on June 17, 2017, Ms. Munro had a seizure while in her cell. Her cellmates alerted Jail staff of Ms. Munro's medical crisis.

4.11    A jail sergeant instructed a Correct Care nurse to evaluate Ms. Munro.

4.12    That nurse then visited Ms. Munro in her cell and evaluated her at around 5:32 p.m.

4.13    Ms. Munro told the nurse that she suffered frequent seizures, and that the seizures "remind me to take my meds."

4.14    Despite this explanation from Ms. Munro, Defendants did not give Ms. Munro the medications her doctor prescribed to her.

4.15    Instead, Ms. Munro was left in her cell with no additional treatment or precautions taken to address her seizures and MS.

4.16    Ms. Munro suffered another seizure at approximately 6:30 p.m. on June 19, 2017.

4.17    Defendant Candace Priest, RN, evaluated Ms. Munro at approximately 6:43 p.m. that day.

COMPLAINT FOR DAMAGES - 4

No.

11641.01 lg090701

MacDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1    4.18    Priest found Ms. Munro bleeding inside her mouth as a result of biting the inside

2    of her cheek during the seizure.

3    4.19    Ms. Munro reported that she was in extreme pain all over her body.

4    4.20    Priest then found a piece of paper on Ms. Munro's bed with a handwritten note

5    that she interpreted as Ms. Munro's expression of suicidal ideation.

6    4.21    Ms. Munro denied having suicidal thoughts or plans.

7    4.22    Without doing any further mental health evaluation, Defendant Priest

8    recommended that Ms. Munro be moved to the Jail's "safe cell" because of the note.

9    4.23    Per Priest's recommendation, Ms. Munro was removed from her group cell and

10   placed in the "safe cell" on the evening of June 19, 2017.

11   **C.    The Defendants Subjected Ms. Munro to Inhumane Conditions of Confinement.**

12   4.24    Before Defendants and other jail staff transferred Ms. Munro to the safe cell, she

13   was forced to remove all of her clothes.

14   4.25    Ms. Munro was issued a "safety smock" an itchy, ill-fitting piece of clothing that

15   did not adequately cover her body.

16   4.26    She was not allowed to wear any other clothing while in the safe cell.

17   4.27    The safety smock exposed intimate parts of Ms. Munro's body.

18   4.28    Male guards looked in on Ms. Munro through a small window on the door of the

19   safe cell and saw intimate parts of her body exposed.

20   4.29    The safe cell was significantly smaller than other cells in the Jail.

21   4.30    The safe cell contained no furniture, including no mattress.

22   4.31    The safe cell contained no toilet.

23   4.32    When Ms. Munro needed to use a toilet while in the safe cell, her only option was

24   to urinate and defecate into a hole in the floor with a grate over it.

25   4.33    Jail staff provided only a few squares of toilet paper to Ms. Munro while she was

26   in the safe cell.

27   4.34    The safe cell contained no sink.

COMPLAINT FOR DAMAGES - 5

No.

11641.01 lg090701

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1    4.35    Jail staff kept the lights on in the safe cell 24 hours per day.

2    4.36    Jail staff did not lower or dim the safe cell's lights in any way during the

3    nighttime hours.

4    4.37    The floor and walls of the safe cell were padded, but the padding was hard.

5    4.38    Ms. Munro had nowhere to sleep other than the floor while she was in the safe

6    cell.

7    4.39    Ms. Munro was alone in the safe cell.

8    4.40    Ms. Munro did not have contact with any other detainees while she was in the

9    safe cell.

10    4.41    No medical personnel visited or evaluated Ms. Munro in the safe cell on June 19,

11    2017.

12    4.42    Ms. Munro suffered two seizures while in the safe cell.

13    4.43    Ms. Munro suffered bruising as a result of the seizures.

14    4.44    After one of the seizures she suffered while in the safe cell, Ms. Munro informed

15    the next guard she saw that she had suffered a seizure.  The female guard responded by asking

16    what Ms. Munro expected her to do about it.

17    4.45    Ms. Munro asked the guard to get a nurse to check on her, but no nurse visited

18    Ms. Munro in response to her request for medical attention.

19    4.46    On June 20, 2017, Defendant Julie Keegan, RN, visited Ms. Munro in the safe

20    cell in order to complete an "Intake Mental Health Assessment."

21    4.47    According to the form, Defendant Nurse Keegan completed the "Intake"

22    assessment at 1:07 p.m. on June 20, 2017.

23    4.48    Keegan filled out several boxes under a section called "Suicide Potential

24    Screening."  She did not indicate anything on the section called "Summary," nor one called

25    "Disposition."  Keegan thus provided no diagnosis or plan of action.

26

27

COMPLAINT FOR DAMAGES - 6

No.

11641.01 lg090701

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

4.49    According to the criteria on the form and the boxes Keegan checked, Keegan concluded that Ms. Munro did not qualify for "immediate action," but instead only for a "routine referral."  Nonetheless, Nurse Keegan kept Ms. Munro confined to the "safe cell."

4.50    Keegan did not provide Ms. Munro with her prescribed medications, despite Ms. Munro's request that she do so.

4.51    Ms. Munro remained in the safe cell following Keegan's assessment.

4.52    No other medical personnel visited Ms. Munro on June 20, 2017.

4.53    The next day, at approximately 10:21 a.m. on June 21, 2017, James McIntyre, LMHC, DMHP of Peninsula Behavioral Health, a private, non-profit community health center, conducted an additional assessment of Ms. Munro in the safe cell.

4.54    Ms. Munro again denied any suicidal ideation, and Mr. McIntyre concluded she did not meet the criteria for continued detention in the safe cell.  He recommended that Jail staff release her from the safe cell.

4.55    Jail staff finally released Ms. Munro from the safe cell at some time after 2 p.m. on June 21, 2017.  She was then assigned to the general population of the Jail.  She was still denied her prescribed medications.

4.56    Ms. Munro was released from the Jail on June 24, 2017.

### V.    LEGAL CLAIMS

5.1    Violations of the Eight Amendment:  The facts described above constitute violations of rights guaranteed to Ms. Munro by the Eighth Amendment to the United States Constitution prohibiting cruel and unusual punishment.  These violations (as well as other Constitutional violations alleged below) are actionable under 42 U.S.C. § 1983 because the individual Defendants acted under color of state law.  Specifically, Defendants Candace Priest and Julia Keegan acted under color of state law by so closely collaborating with state actors in the treatment and detention of Ms. Munro, and performing that traditional public function (medical care for inmates) as to make their actions indistinguishable from the state's, and by

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1    serving the public function of providing medical treatment to pretrial detainees confined under

2    the authority of the state law.

3         5.2    Substantive Due Process:  The facts described above constitute violations of Ms.

4    Munro's Substantive Due Process rights under the Fourteenth Amendment by all of the

5    Defendants.  Defendants Correct Care Solutions/Wellpath, Candace Priest and Julia Keegan

6    were deliberately indifferent to Ms. Munro's medical needs.  The decisions by Defendants

7    Correct Care Solutions/Wellpath, Candace Priest, and Julia Keegan to place and then keep Ms.

8    Munro in a safe cell were deliberately indifferent to Ms. Munro's needs.  Defendant Correct Care

9    Solutions/Wellpath is liable under *Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978),

10   because the actions taken against Ms. Munro with respect to the withholding of her prescription

11   medications, and her placement in a safe cell that is not adequately designed to meet a pretrial

12   detainee's basic needs were taken pursuant to company policies, patterns, and practices.

13        5.3    Procedural Due Process:  The facts described above constitute violations of Ms.

14   Munro's Procedural Due Process rights under the Fourteenth Amendment by Defendants.

15   Defendants deprived Ms. Munro of her property, including her prescribed medications and her

16   cane, without providing her any due process.  Defendants also deprived Ms. Munro of her liberty

17   by placing and keeping her in the safe cell without providing any due process until a third party

18   assessed the propriety of her confinement in the safe cell.

19        5.4    Americans with Disabilities Act/Washington Law Against Discrimination:  The

20   facts described above constitute violations of Ms. Munro's rights under Title II of the Americans

21   with Disabilities Act, 42 U.S. Code § 12131 *et seq.*, and the Washington Law Against

22   Discrimination, RCW 49.60 *et seq.*  Defendants discriminated against Ms. Munro because of her

23   disability by denying her full access to the Jail facilities through deprivation of her prescription

24   medications and cane, and confining her in the safe cell due to behaviors related to her disability.

25        5.5    Medical Malpractice:  The facts described above constitute medical malpractice,

26   giving rise to a claim against Defendants Correct Care Solutions, Candace Priest, and Julia

27

COMPLAINT FOR DAMAGES - 8

No.

11641.01 lg090701

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1  Keegan, under RCW 7.70 *et seq*.  Defendants' medical treatment of Ms. Munro fell below the

2  standard of care applicable to providers of medicine in the State of Washington.

3        5.6    <u>Outrage</u>:  By the facts described above, Defendants committed the tort of outrage

4  against Ms. Munro.  Defendants' actions in depriving Ms. Munro of her medications, ignoring

5  her medical needs, and placing her in inhumane conditions of confinement were extreme and

6  outrageous, and intentionally or recklessly inflicted emotional harm on Ms. Munro.

7                         **VI.**    **REQUEST FOR RELIEF**

8        WHEREFORE Plaintiff requests relief as follows:

9        6.1    General and special damages, in an amount to be proven at trial;

10        6.2    Declaratory and injunctive relief;

11        6.3    Punitive damages as available under federal law;

12        6.4    Reasonable attorney's fees and costs of litigation;

13        6.5    The right to conform the pleadings to the evidence presented at trial;

14        6.6    Post-judgment interest on any amounts recovered from the time of the judgment

15  to the time of satisfaction of judgment; and

16        6.7    Such other and further relief as the Court deems just and equitable.

17        DATED this 17ᵗʰ day of June, 2020.

18

19                        MacDONALD HOAGUE & BAYLESS

20

21                        By:

22                           Joe Shaeffer, WSBA #33273
                            joe@mhb.com

23                           Attorneys for Plaintiff

24

25

26

27

COMPLAINT FOR DAMAGES - 9

No.

11641.01 lg090701